IN THE UNITED STATES DISTRICT COURT OF SOUTH CAROLINA
FLORENCE DIVISION

RECEIVED
USDC CLERK FLORENCE, SC
2017 OCT 30 PM 1:20

Sandra Harmon
Plaintiff

Vs.

Sussex County, State of Delaware Administration
Todd Lawson in his capacity as County Administrator
Constable Mike Castello In his capacity as Government Affairs
Manager for Sussex County Administration
Kelly Passwater in her capacity as Zoning Inspector for Sussex County
Administration

## NOTICE OF COMPLAINT

Sandra Harmon hereby files this notice of complaint and in support avers as follows:

Plaintiff is filing this complaint to protect her rights to her private property and preserve her rights to restore her home that was destroyed in a suspiciously caused fire in Rehoboth Beach, Delaware, and against the infringement of her rights by harassment actions of Sussex County Government Officials. Plaintiff would also like to continue to enjoy her property when she visits Delaware by being able to stay over night with access to a water supply when she visits her beach property during vacation times throughout the year.

Plaintiff resides in the State of South Carolina, and current works as a state certified school teacher, and would like to appear in court for this action via video from US District Court- South Carolina District @ McMillan Federal Bldg. 401 W. Evan Street, Florence, SC 29501.

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction pursuant to Article III and USC 28 1332 Diversity of Jurisdiction
2. Venue is proper in this district because the events that gave rise to this action occurred in the District of Delaware.

## PARTIES

1. Plaintiff, Sandra Harmon whose mailing address is 815 F Street, Hartsville, SC 29550.
2. Defendant: Sussex County Administration: Todd Lawson individually, and in his official capacity as Administrator of Sussex County & Sussex County administration whose employment address is 2 The Circle 1st Floor, Georgetown, De. 19947

3. Defendant: Mike Castillo in his official capacity as Government Affairs Manager whose employment address is 2 The Circle 1st Floor, Georgetown, De. 19947.
4. Defendant: Kelly Passwater in her official capacity as Zoning Inspector whose employment address is 2 The Circle 1st Floor, Georgetown, De. 19947.

## CLAIMS

1. Sussex County Government Officials are intentionally violating my 1st Amendment right to the peaceful enjoyment of my private property without government interference.
2. Sussex County Government Officials are engaging in unlawful tactics to have African American families displaced from their beach property via suspicious house fires during the owners absence from his/ her home.
3. Defendant intentionally cut off the water supply on my property by covering my well with dirt, making it impossible for me to connect to my water supply when I come to the state to visit during the summer and stay in the 16 X 24 shed that I now live in when I come for short vacations in the state
4. Defendants are seeking now to remove my shed that has been in it's same location for well over 10 years now in an attempt to prevent Plaintiff for having use of her property..

## FACTS SUPPORTING CLAIMS

1. Plaintiff learned of a proposed demolition order on June 23, 2017, and immediately contacted Constable Mike Castillo, who informed Plaintiff that he did not have to notify her, since her name was not on the list to receive mail, despite Plaintiff name being one of the two owners of record for the property, as well plaintiff personally providing her information to Constable Castillo to be copied on correspondence about the residence located at 37533 Oyster House Road, Rehoboth Beach, De., formerly 37850 Oyster House Road, Rehoboth Beach, Delaware.

2. Upon the complaint of Constable Mike Castillo, Plaintiff acted by having commercial dumpsters from Waste Management Authority placed on the property, and paid a team of workers to take all burnt trash and loose debris from the home to prevent the home from being a safety hazard, (although no one lives close to the residence to cause a concern for an issue of safety) and placed a tarp over the whole house.

3. Again after the men knocked down loose structures, Plaintiff purchased two large heavy duty tarps from Lowes to place over the entire structure of the remaining

structure, as Constable Castillo informed Plaintiff that placing a tarp over the home would be sufficient to secure the home.

4. Unknown to me at the time, Constable Castillo was telling me one thing, and in the meantime, engaging in unprofessional conduct via trickery, by arranging to have my home demolished, without making me aware of what was transpiring without notice to me, Plaintiff.

5. He was taking advantage of the rift or conflict that existed between me and my Co-owner Lefton Harmon. Playing two people against each other.   Lefton read the contents of the notice to me on June 23rd, 2017, when he voiced his opinion about my son living in the shed on the property due to the house burning causing him to be homeless.

6. After filing for an emergency injunction in the court, I was contacted by Constable Costello who informed me that if I withdrew my complaint in the Superior Court, that I could just file for a hearing with Sussex County Administration hearing board to address the issue regarding the demolition order.

7. Constable Costello sent me a copy of a stipulation of dismissal that was drafted by the Counsel for Sussex County Administration.

8. I made changes to the stipulation for dismissal, and forwarded it to the court.   I recently filed a motion to withdraw the case for filing in federal court due to diversity of citizenship, as well as my constitutional claim.

9.

**Plaintiff further contend that:**

10. Sussex County Officials with less than two weeks notice demanded that I provide County Administration Hearing Board with $600 or my hearing date that was set with less than three weeks notice would be canceled.    (see exhibit no. 1)

11. I, Plaintiff requested that I be given an application for a financial hardship waiver.

12. Defendant's declined to provide me a waiver, and failed to reschedule the hearing date to provide me time to come up with the $600.

13. Plaintiff, recently became employed as a school teacher, but as a result of being out of work for the past two years, is currently experiencing a financial hardship.

14. According to an eye witness, Defendants immediate began demolishing the home on the 14th of September, clearly in a rush to deny Plaintiff right to due process as well as equal protection under the law a direct result of her economic condition of not having the money to pay $600 so that she could be properly heard on the merits of her appeal of the demolition order.

15. Plaintiff nineteen year old son recently deceased without notice, within that past few months, and Plaintiff have yet to finish paying his funeral costs, in conjunction with other living expenses, caring for minor children, and starting a new job in a different state.

16. County Administration has acted very inconsiderate and unreasonable in this current action.

17. As noted by Plaintiff exhibit no. 2, Defendants noted that they were going to demolish Plaintiff residence.

**NEW INFORMATION**

A. Defendants om September 14, 2017, immediately begun the demolition of my home.

B. Defendants stated that the home was unsafe, although Plaintiff had all loose structures on the home taken down, and rapped the home using three large tarps purchased from Lowes Home Improvement store.

C. The defendants, went beyond demolishing the home when they filled Plaintiff basement with fill dirt, thereby interfering with Plaintiff foundation to her home which was not effected by the fire.

D. The defendant's exceeded their duties when they covered Plaintiff Water well with fill dirt.

E. The defendants went beyond their duties when they removed all the pieces that were connected to Plaintiff well to prevent Plaintiff from having a water supply on her property.

F. Plaintiff uses her shed that is located on the property to live in when she visits during the summer months.

### The effects of demolition of my home :

16. My home was constructed in 1930s and is within 1.4 mile range from the Beach waters.

17. The County and City building Codes have since change, requiring specific measurements and other data for New Construction Homes.

18. For the home to be rebuilt on its current foundation, a wall to the old home must be left standing.

19. Currently, a steady wall remains standing in the home, which will make it possible for me to have my home rebuilt with just having to repair the foundation, and build a new structure.

20. Demolishing the home, will again, cause problems in having another home constructed in the same area on the property, thereby affecting my property rights to have my home restored on my property.

21. Therefore, I am seeking to prevent the demolition because the home is not a threat to anyone's safety because no one lives close to the home. (OMIT)

A. I am now seeking an order to rebuild on the brick foundation that remains from the burnt home.

### The burning of the home:

22. Plaintiff home was suspiciously and unlawfully burned down by Individuals that have affiliations with the county officials or the wealthy business partners that seek to buy the property.

23. The smell of gas, still remains inside the home.

24. The home was burned down when my son was away from home a few days.

25. The home is in an isolated corner, and my property line is adjacent to the Rehoboth-Lewes Canal, making it easy for culprits to set the house on fire and be unnoticed.

26. This is the second fire to a beach home owned by an African American family in the area.

27. The other home belonged to my friend's mother. It was located within 1.5 mile of my home. Her home was suspiciously set on fire, while she was away from her home.

**WHEREFORE Plaintiff requests of the following relief:**

1. An emergency injunction order to prevent the demolition of my home. (OMIT)

2. If the County demolished the home without giving Plaintiff an opportunity to be heard on the merits of her claim, that Plaintiff be given court ordered rights to have my home reconstructed using the same measurements as outlined by the foundation of my current or recently demolished home.

3. That this Court have the County Officials to halt the harassing tactics, and over all negative conduct against the plaintiff.

4. That, a hearing on the merits of plaintiff claims be held to address Plaintiff Claims. (Can't be held due to conduct of the defendants)

5. That, Plaintiff rights to the peaceful enjoyment of her home be restored without further government interference.

6. That an order be issued and provided to both the county and city granting Plaintiff the right to have her home restored on the foundation of her current home, and if demolished, the home that was demolished without given Plaintiff due process, and a timely manner in which to properly respond - be able to be restored without restrictions.

7. That the County/ City be prevented from removing my shed that has been on my private property in the same location for well over 10 years.

8. That Plaintiff be awarded court cost, and other related fees associated with filing this case, as well as attorney fees if plaintiff is afforded a counsel to assist in litigating this claim.

9. That the defendant be ordered to remove the fill dirt that they use to cover plaintiff foundation.

10. That the defendants be made to restore Plaintiff water well, that they had no business covering with dirt.

11. That the defendants refund Plaintiff $650.00 for the tarp that they threw away the covered Plaintiff home.

12. That the defendants replace of the parts water related equipment that was used to supply water to the home that they covered with dirt. Plaintiff used the water from the well at her beach

home this past summer when she stayed for one week in her shed this past summer.

13. The the cost of the rush demolition be billed to the defendants, to be responsible for the total cost.

14. That if Plaintiff can be awarded a court appointed attorney to aid in this litigation.  (Plaintiff recently became employed mid August as a state certified teacher, there can afford some of the cost of counsel)

15. Plaintiff want this court to investigate the questionable burning of African Americans beach owned homes in the Rehoboth Beach area.   The conduct is suspicious.   When a wealthy land owner wants to buy your property, if you refuse to sell.   Your house is then burned down, and you are forced to sell.   My girl friends mother was burned down under the same suspicious circumstances as my home was. Her home was located on the beach as well.   It appears that African American families that did not voluntarily sign their property over to the alleged Land Trust that was created and targeted African American beach real estate owners, are being confronted with suspicious fires that result in the total destruction of there home by fire.   The fires generally happen when the home owner is away from home.

16. Award Plaintiff $350,000 for the conduct complained about in this complaint engaged in by the defendants.

17. That the defendants not be allowed to remove my shed from off my property, and take the fill dirt off my water supply located on my property.

Dated:  9/10/2017

Sandra Harmon  10/25/17
Sandra Harmon     302-245-0299
Sohara1966@aol.com
815 F. Street
Hartsville, SC 29550

See exhibits attached p. 1-8

DATED:   October 21, 2017   SENT OUT