IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SANDRA HARMON,

    Plaintiff,

v.

    Civil Action No. 17-1817-RGA

SUSSEX COUNTY, TODD LAWSON,
CONSTABLE MIKE CASTELLO,
and KELLY PASSWATER,

    Defendants.

**MEMORANDUM**

Plaintiff appears *pro se*. She began this lawsuit to protect her private property and preserve her right to restore her home located in Rehoboth Beach, Delaware, which she owns with "Leroy William Harmon Heirs" and Lefton Harmon, Sr. (D.I. 1; D.I. 1-1 at p.8). Plaintiff alleges violations of her rights under the First and Fourteenth Amendments to peaceful enjoyment of the property, and unlawful tactics by Sussex County government officials. On June 9, 2018, Plaintiff filed a motion for emergency and preliminary injunction to prevent a Sheriff's sale scheduled for June 19, 2018, in Sussex County, Delaware. (D.I. 27). Defendants responded. (D.I. 32).

**I.    Background**

Plaintiff began this action in the United States District Court for the District of South Carolina. The case was transferred to this Court on December 19, 2017. (D.I. 13, 14). Before beginning this action, on June 27, 2017, Plaintiff filed a case in the Superior Court of the State of Delaware in and for Sussex County against Sussex

1

County and Mike Castello. *Harmon v. Sussex County*, Civ. A. No. S17C-06-035 ESB (Del. Super.). Plaintiff sought an injunction against a demolition order for property located on Oyster House Road in Rehoboth, Delaware. The property, which had been destroyed by fire, had been determined to be dangerous, unsafe and unfit for human occupation, occupancy or use and was a public nuisance under common law. (D.I. 1-1 at p.6).

Plaintiff became aware of the demolition order on June 23, 2017. The demolition order provided that the owners were to raze the structure by June 24, 2017 and, if they failed to comply with the demolition order, the Sussex County Code Office would have the structure razed and removed and the costs of razing and removing would be charged against the real estate upon which the structure was located, and a lien would be placed upon the real estate as provided in the Sussex County Code. (*Id.*). The parties agreed that no action would be taken to demolish the property until disposition of the matter by the Sussex County Board of Appeals. *Harmon*, Civ. A. No. S17C-06-035 ESB, at Sept. 6, 2017 Order.

In the meantime, on July 25, 2017, Plaintiff and the other owners received a violation notice regarding a shed on the property deemed an "illegally placed structure," and they were given until August 18, 2017 to correct the violation.[1] (D.I. 1-1 at p.8). On August 31, 2017, Plaintiff was notified by email that the demolition appeal hearing was set for September 20, 2017. (*Id.* at p.1). As part of the process, Plaintiff was

---

[1] Plaintiff alleges that the shed has been in the same place for over ten years, and she lived in the shed for short stays after the house was destroyed by fire. (D.I. 1 at p.2).

required to pay a $600 application fee. (*Id*. at p.1). Plaintiff sought a fee waiver due to financial hardship and was told the County had no process to waive the fee and, if not received by September 13, 2017, the hearing would be canceled. (*Id*. at pp. 2-3). Plaintiff did not pay the fee and was notified on September 14, 2017 that the hearing was canceled. (*Id*. at p.5). She alleges demolition of the home began the same day. (D.I. 1 at p.4). She further alleges Defendants took steps beyond demolition when they filled the basement with fill dirt and covered the water well with fill dirt. (*Id*.) The Complaint seeks compensatory damages and injunctive relief.

On January 12, 2018, a little over three weeks after this case was transferred from South Carolina to here, the Department of Finance of Sussex County filed a monitions suit against Plaintiff and the other owners for delinquent sewer and water bills and the demolition lien. *Department of Finance of Sussex County v. Harmon Heirs*, Civ. A. No. S18T-01-002 (Del. Super.) The total arrearages amount to $14,063.10. Monition was entered on January 18, 2018, and posted on the property on January 23, 2018. *Department of Finance of Sussex County*, Civ. A. No. S18T-01-002 at Jan. 24, 2018 return of writ. On May 30, 2018, a notice of the Sheriff's sale was posted at the physical entrance of the property and, on May 31, 2018, Plaintiff and the other property owners were notified by certified mail of a Sheriff's sale of the real estate to take place on June 19, 2018, at 9:30 a.m. *See Department of Finance of Sussex County*, Civ. A. No. S18T-01-002 at June 13, 2018 Ex. A, Affidavit of Proof of Mailing; Ex. B, Notice to Lienholders; Ex. C Affidavit of Posting  The notice states that it "does not constitute a

representation that the public sale will be held, which sale is subject to possible stay, redemption, continuance or dismissal."[2] (D.I. 27-2 at p.3).

On June 8, 2018, Plaintiff filed a motion to dismiss and motion for injunctive relief in Civ. A. No. S18T-01-002. She filed an identical motion for injunctive relief in this case. (D.I. 27). Plaintiff contends the Sheriff's sale is retaliatory. The motion states that on May 27, 2018, Plaintiff declined an offer of sale of the property initiated by West Rehoboth Community Land Trust, that Defendants were upset by her refusal and are "unlawfully . . . using their political influence seeking to unlawfully strip [her] of her private property," "for their own private use," when, through their attorney, they "drafted a plan with less than [thirty] day[s'] notice, and without any warning to . . . Plaintiff -- to place [the] property up for Sheriff sale on [June 19,] 2018." (Id. at ¶¶ 1-2). The motion states that West Rehoboth Community Land Trust and its registered agent David J. Weidman disguised themselves as Partnerships for Development, Inc. (Id. at ¶ 1). The agreement of sale names Plaintiff and Lefton Harmon, Sr. as the sellers, Partnerships for Development Inc. as the buyer, and provides for a $300,000 purchase price. (D.I. 27-1 at p.1). Plaintiff asserts that Hudson & Downs Corporation, with West Rehoboth Community Land Trust, have been working together to strip African American residents of their beach property in the name of the land trust. (D.I. 27 at ¶ 5).

According to Plaintiff, she has made multiple payments on the water and sewer bill, noting that one check was returned, and stating the bill will be paid in full the month

---

[2] Presumably the sale will not take place should the property owners satisfy the arrearages.

of June 2018. (*Id.* at ¶¶ 10-14). She states that Sussex County never attempted to arrange for payments on the demolition and she "just began to pay monthly on the outstanding cost of demolition until the balance is paid in full." (*Id.* at ¶¶ 15-17) Plaintiff is currently challenging the demolition cost in this action. (*Id.* at ¶ 16).

Plaintiff asks the Court to issue an emergency injunction to the Superior Court of the State of Delaware in and for Sussex County to prevent: (1) immediate and irreparable injury, loss, and damage; (2) the Sheriff's sale of the property located on Oyster House Road in Rehoboth Beach, Delaware; (3) Defendants and their associates from further retaliatory and harassing conduct; and (4) Sussex County Administration Department of Finance from having the property disposed of without due process of law.

Defendants oppose the motion on the grounds Plaintiff has failed to meet the requisites for injunctive relief. (D.I. 32). They note that the arrearages, not retaliation, are the actual cause of the Sheriff's sale. In addition, they note that West Rehoboth, Partners for Development, Inc., and Hudson & Downs Corporations are not defendants in this action, and they are not affiliated with Defendants in this action. (D.I. 32 at ¶¶ 10, 11). Defendants contend that they did not offer to purchase the property at issue and have no reason to retaliate, noting that as a government entity and public servants, they would gain no right to use the subject property under the offer of sale.

## II.    Standards of Law

5

A preliminary injunction is "an extraordinary remedy that should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *Id.* Plaintiff, as the movant, bears the burden of showing that these four factors weigh in favor of granting the injunction. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014).

## III. Discussion

**Abstention.** Under the *Younger* abstention doctrine, a federal district court must abstain from hearing a federal case which interferes with certain state proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971). The Court may raise the issue of *Younger* abstention *sua sponte*. *O'Neill v. City of Philadelphia*, 32 F.3d 785, 786 n.1 (3d Cir. 1994). Under *Younger*, federal courts are prevented from enjoining pending state proceedings absent extraordinary circumstances.[3] *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982). Abstention is appropriate only when: (1) there are ongoing state proceedings that are judicial in

---

[3] The abstention doctrine as defined in *Younger v. Harris*, 401 U.S. 37 (1971), provides that federal courts are not to interfere with pending state criminal proceedings and has been extended to civil cases and state administrative proceedings. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *Huffman v. Pursue Ltd.*, 420 U.S. 592 (1975).

nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise the federal claims. *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010). The doctrine applies to proceedings until all appellate remedies have been exhausted, unless the matter falls within one of the *Younger* exceptions.[4] *Huffman v. Pursue Ltd.*, 420 U.S. 592, 608 (1975).

The Court takes judicial notice that the monition proceeding remains pending in the Superior Court. The relief sought by Plaintiff includes injunctive relief to stay the Sheriff's sale. The *Younger* elements have been met and none of the its exceptions apply. First, there are pending State court proceedings that directly relate to Plaintiff's dispute. Second, Delaware has an important interest in resolving real estate lien issues, and a ruling in the Superior Court proceeding implicates the important interest of preserving the authority of the state's judicial system. *See, e.g., Gray v. Pagano*, 287 F. App'x 155 (3d Cir. 2008) (court abstained under *Younger* doctrine where plaintiffs sought a declaration that the judge was not authorized to nullify transfer of title and for an order enjoining the sheriff from conducting a sheriff's sale); *Shipley v. New Castle Cnty.*, 2008 WL 4330424 (D. Del. Sept. 19, 2008) (finding real estate tax and lien issue proceedings important state interests under *Younger* doctrine); *Prindable v. Association of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1262 (D. Haw. 2003)

---

[4] Exceptions to the *Younger* doctrine exist where irreparable injury is "both great and immediate," *Younger*, 401 U.S. at 46, where the state law is "flagrantly and patently violative of express constitutional prohibitions," *id.* at 53, or where there is a showing of "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Id.* at 54.

(finding foreclosure and ejectment proceedings important state interests under *Younger* doctrine). Finally, Plaintiff has an adequate opportunity to raise her claims in Superior Court, and Delaware courts provide adequate forums for review of her claims. Accordingly, pursuant to *Younger* and its progeny the Court must abstain. See *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (stating that *Younger* abstention is favored even after the plaintiffs failed to raise their federal claims in the ongoing state proceedings).

**Injunctive Relief.** Even if abstention was not required, the Court finds that denial of the motion is appropriate based upon the four-factor preliminary injunction standard. Plaintiff recites facts, but fails to argue that she is likely to succeed on the merits. Her motion speaks to injury, loss, and damage, but not success. Defendants dispute her allegations. The exhibits provided and filings in the Superior Court cases indicate that Plaintiff was placed on notice that she and the other property owners would be responsible for payment of the demolition fees if they did not demolish the property within the required time frame. By her own admission, Plaintiff is aware of the outstanding water bill, although for at least one payment there was a returned check. (D.I. 27 at p. 3). In addition, the motion states that she "just began to pay monthly on the outstanding cost of demolition." (*Id.*). As Defendants note, the Sheriff's sale is the result of mounting arrearages on the property and is permitted by statute. Based on the record, the Court cannot say that Plaintiff has met her burden to show a reasonable probability she will prevail on the merits.

The second factor is irreparable harm. In order to meet the irreparable harm requirement, Plaintiff "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "[T]he injury must be of a peculiar nature, so that compensation in money cannot atone for it." *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987). For purposes of this motion, the Court finds that Plaintiff would suffer irreparable harm without injunctive relief based upon the unique nature of real estate and the fact that she will lose her interest in the property should the scheduled Sheriff's sale take place.

As to the third factor, the Court sees no substantial harm to Defendants as they already have a monition that can be enforced by a future Sheriff's sale. Any damage in scheduling a new Sheriff's sale is minimal when compared with Plaintiff's loss of her property. Finally, the Court finds that the public interest does not weigh substantially weigh in favor of either side. On the one hand, there is a significant public interest in maintaining home ownership. *See, e.g.*, *McMahon v. JPMorgan Chase Bank, N.A.*, 2016 WL 3637002 (E.D. Cal. June 29, 2016); *Payne v. Reiter & Schiller, P.A.*, 2011 WL 5143040, at *2 (D. Minn. Aug. 5, 2011). On the other hand, there is an interest in respecting the finality of the monition and avoiding interference with that judgment. *See, e.g.*, *Clark v. U.S. Bank Nat'l Ass'n*, 2004 WL 1380166, at *8 (E.D. Pa. June 8, 2004).

In sum, the Court finds, that when the factors are considered, Plaintiff has not met the requisites for injunctive relief. Most notably, she has failed to show a likelihood of success on the merits.

## IV. Conclusion

For the above reasons, the Court will abstain under the *Younger* abstention doctrine and, in the alternative, deny the "Urgent request; verified motion for emergency & preliminary injunction."[5] (D.I. 27).

A separate order shall issue.

---

[5]The jurisdictional limitation of the Anti–Injunction Act, 28 U.S.C. § 2283, is inapplicable to cases brought pursuant to 42 U.S.C. § 1983. *See Mitchum v. Foster*, 407 U.S. 225 (1972). Plaintiff's complaint is liberally construed as raising a § 1983 claim alleging violations of her constitutional rights.