IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SANDRA HARMON,<br><br>    Plaintiff,<br><br>v.<br><br>SUSSEX COUNTY, State of Delaware Administration, et al.,<br><br>    Defendants. | Civil Action No. 17-1817-RGA |

Sandra Harmon, Hartsville, South Carolina. Pro Se Plaintiff.

Kevin J. Connors, Esquire, and Artemio C. Aranilla, II, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

September 12, 2019
Wilmington, Delaware


**ANDREWS, U.S. District Judge:**

Plaintiff Sandra Harmon appears *pro se*. She commenced this lawsuit to protect her private property and preserve her right to restore her home located in Rehoboth Beach, Delaware.[1] (D.I. 1; D.I. 1-1 at p.8). Plaintiff alleges violations of her rights under the First and Fourteenth Amendments to peaceful enjoyment of the property, and unlawful tactics by Sussex County government officials. Plaintiff alleges jurisdiction by reason of diversity pursuant to 28 U.S.C. § 1332. (D.I. 1 at 1). Before the Court are the parties' cross-motions for summary judgment. (D.I. 59, 61). Also before the Court is Plaintiff's motion to strike Defendants' reply brief.[2] (D.I. 73). The matters have been fully briefed.

## I. BACKGROUND

Plaintiff commenced this action in the United States District Court for the District of South Carolina. All issues relate to real property located at 37533 Oyster House Road in Rehoboth Beach, Delaware, that is owned by the "Leroy William Harmon Heirs," who include Plaintiff and Lefton Harmon. (D.I. 1 at 2-3). The matter was transferred to this Court on December 19, 2017. (D.I. 13, D.I. 14).

On April 7, 2017, Sussex County Constable Ryan W. Stuart prepared a field inspection report and found the property non-compliant with the Sussex County Housing Code as "unfit for human occupancy" with an "unsafe structure" following an inspection that found the property had been damaged due to fire. (D.I. 60-1 at 2-7). A demolition

---

[1] Plaintiff did not file a verified complaint. Thus, the Court is precluded from treating it as the equivalent of an affidavit for purposes of Fed. R. Civ. P. 56(e). *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003).

[2] The Court finds no basis to strike Defendants' reply brief. The motion will be denied.

1

order issued that provided the owners were to "raze" the structure by June 24, 2017. (*Id.* at 9). If they failed to comply with the demolition order, the Sussex County Code Office would have the structure razed and removed, the costs of razing and removal would be charged against the real estate upon which the structure was located, and a lien would be placed upon the real estate as provided in the Sussex County Code. (*Id.*). A copy of the demolition order was sent by certified mail to the "Leroy William Harmon Heirs and Sandra Harmon" at the address of record in New Castle, Delaware. (D.I. 60-1 at 11). Lefton Harmon signed the return receipt. (*Id.*). Plaintiff alleges that she became aware of the demolition order on June 23, 2017 when Lefton Harmon read the contents of the notice to her. (D.I. 1 at 2, 3).

Plaintiff filed a case in the Superior Court of the State of Delaware in and for Sussex County against Sussex County and Mike Castello, *Harmon v. Sussex County*, Civ. A. No. S17C-06-035 ESB (Del. Super.) and sought an emergency injunction against the demolition order for the Oyster House Road property. The parties entered into a dismissal agreement that no action would be taken to demolish the property until disposition of the matter by the Sussex County Board of Appeals. (D.I. 55 at 10). The stipulation of dismissal states, "In the event [that] Sandra Harmon or any other owner of the subject property fails to file an appeal with the Sussex County Board of Appeals pursuant to Article III, Section 71-31(D) on or before August 15, 2017, Sussex County may proceed to enforce the Demolition Order." (*Id.*).

In the meantime, on July 25, 2017, the owners of the property received a Sussex County violation from Defendant Kelly R. Passwater following an inspection that found a shed on the property was illegally located and illegally being used as a dwelling. (D.I. 1-

2

1 at 8-9). The owners were given an August 18, 2017 violation correction date. (*Id.* at 9).

On or about August 31, 2017, Plaintiff was notified via email by Defendant Michael Costello, Government Affairs Manager, Sussex County Administrative Building, that the demolition appeal hearing was set for September 20, 2017, and that there was a $600 application fee for the hearing. (D.I. 1-1 at 1-2). On August 31, 2017, Plaintiff sought a fee waiver due to financial hardship. (*Id.* at 3). Costello's email, dated September 6, 2017, advised Plaintiff that the Board of Appeals had no process to waive the fee and should it not be received by September 13, 2017, the September 20, 2017 hearing would be canceled. (*Id.* at 2).

On September 9, 2017, Plaintiff emailed Costello and other Sussex County employees stating that she had advised Costello on August 31, 2017 that she could not attend the September 20, 2017 hearing due to a previously scheduled doctor's appointment, and she asked Costello to reschedule the hearing and send her a waiver form as an indigent citizen. (*Id.* at 4). Plaintiff warned that she would seek an emergency injunction in federal court if the hearing proceeded without her. (*Id.*). Plaintiff received an email response the next day from attorney Jason Adkins, who told her:

> [T]he scheduling is set based upon the next available date when the board of appeals members are available. This is the same procedure for any person requesting an appeal. . . . As was previously communicated, you are permitted to have someone appear on your behalf and represent your interests, even if you are unable to attend personally. The County does not have, or offer, indigent fee waivers. Any person who requests a similar appeal is required to pay the same fee being charged to you.

3

(*Id.* at 4). Plaintiff did not pay the required fee and was notified on September 14, 2017 that the hearing was canceled due to her failure to pay the fee and that Sussex County would resume its efforts to bring the property into compliance with the Sussex County Code in accordance with the demolition order that was originally served in April 2017. (*Id.* at 5). The Complaint alleges that demolition began on September 14, 2017. (D.I. 1 at 4).

The Court takes judicial notice that on January 12, 2018, a little over three weeks after this case was transferred here, the Department of Finance of Sussex County filed a monitions suit against Plaintiff and the other owners for delinquent sewer and water bills and the demolition lien. *See Department of Finance of Sussex County v. Harmon Heirs*, Civ. A. No. S18T-01-002 (Del. Super.) at BL-1.³ Monition was entered on January 18, 2018, and posted on the property on January 23, 2018. *Id.* at BL-6.

Partnerships for Development, Inc. offered to purchase the property. (D.I. 62-6 at 1). Plaintiff rejected the offer on May 27, 2018. (*Id.* at 5). On May 30, 2018, a notice of the Sheriff's sale was posted at the physical entrance of the property and, on May 31, 2018, Plaintiff and the other property owners were notified by certified mail of a Sheriff's sale of the real estate to take place on June 19, 2018, at 9:30 a.m. *See* Civ. A. No. S18T-01-002 at BL-16, BL-17, BL-18. According to Plaintiff in her verified motion for injunctive relief dated June 5, 2018, she made multiple payments on the water and sewer bill and indicated it would be paid in full the month of June 2018. (D.I. 27 at ¶¶ 10-14). In addition, she stated that Sussex County never attempted to arrange for

---

³ The Court has access to the Superior Court docket via Bloomberg Law. "BL" is how Bloomberg Law refers to docket entries.

payments on the demolition and she "just began to pay monthly on the outstanding cost of demolition until the balance is paid in full." (*Id.* at ¶¶ 15-17). Other than the County sending Plaintiff "a bill of cost, nothing more was discussed about the demolition cost." (*Id.* at ¶ 16).

On June 8, 2018, Harmon filed a motion to dismiss and motion for injunctive relief in the monition action, alleging violations of her constitutional rights. *See* Civ. A. No. S18T-01-002 at BL-10. On June 18, 2018, the Superior Court denied the motion and ordered that the sale could proceed as scheduled on June 19, 2018. *Id.* at BL-28. A notice of lis pendens was filed on June 19, 2018 and on June 21, 2018, Harmon filed a motion to invalidate and to dismiss. *Id.* at BL-30. On June 19, 2018, the property was sold for $113,500 to Wayne D. Hudson, Robert J. Downes, and David R. Downes, the highest bidder and, in turn, Harmon filed an objection to the sale followed by an amended notice of objection. *Id.* at BL-35, BL-36, BL-44, BL-60.[4] On August 9, 2018, Harmon filed a motion to dismiss. *Id.* at BL-51.

On November 7, 2018, the Superior Court stayed the matter while awaiting resolution of the related federal civil cases Plaintiff had filed, Civ. No. 18-1021-RGA and the instant case Civ. No. 17-1817-RGA. *Id.* at BL-51. Harmon then filed a petition for a writ of mandamus in the Delaware Supreme Court to compel the Superior Court judge to dismiss the monition action. *Id.* at BL-53, BL-56. The Delaware Supreme Court dismissed her petition on December 3, 2018. *In re: Harmon*, 2018 WL 6332269 (Del. Dec. 3, 2018).

---

[4] The Superior Court docket shows that the returned writ originally reported only Wayne D. Hudson as the highest bidder, but the amended writ reported all three as being the highest bidder.

5

A telephone conference in the monition action was held on December 19, 2018 to discuss the wording in the Superior Court's June 18, 2018 order that denied Harmon's motion to dismiss and/or to transfer the monition action to federal court. (D.I. 62-2 at 1-2; D.I. 70-1 at 20-21; Civ. A. No. S18T-01-002 at BL-58). The order stated that the "monition sale sought by [Department of Finance of Sussex County] is premised upon the Defendants' (*i.e.*, Harmon) alleged failure to pay sewer and water fees." (D.I. 62-2 at 1). Because Plaintiff had paid the water and sewer bill in full at the time the order was entered, she questioned why her motion was not granted and why the sale was allowed to proceed. (D.I. 70-1 at 20). During the telephone hearing, the Court stated that although the order states that the monition sale is premised upon the alleged failure to pay the water and sewer bill, that was not the intent of the order and the Court did not think that when the order was signed that the matter was limited solely to water and sewer. (*Id.*). The Court explained the order included the demolition assessment because the demolition assessment was "all part of the monition, and it was all part of the sales execution writ that proceeded." (*Id.*). The Court went on to explain that the wording of the order "did not in any way affect the ability of the County to seek to collect the demolition costs." (*Id.*). On June 19, 2019, an "affidavit of non-redemption" was filed in the monition case. It advised that: (1) the property had been sold; (2) Plaintiff and the other heirs had not redeemed the property by paying all taxes, interest, and costs within 60 days of the confirmation of the sale, as was permitted by Delaware law; (3) there had been no objections to the sale; and (4) "the sale was automatically confirmed as a matter of course." See Civ. A. No. S18T-01-002 at BL-59.

6

Plaintiff claims: (1) Sussex County government officials intentionally violated her First Amendment right to the peaceful enjoyment of her private property without government interference; (2) Sussex County government officials engaged in unlawful tactics to displace African American families from their beach property via suspicious house fires during the owner's absence from his or her home; (3) Defendant intentionally cut off the water supply to Plaintiff's property and made it impossible for Plaintiff to stay in a shed on the property when she came for short vacations; and (4) Defendants sought to remove a shed on the property that had been in the same location for over ten years in an attempt to prevent Plaintiff from using the property. (D.I. 1 at 2).

Defendants move for summary judgment on the grounds that: (1) Plaintiff has failed to adduce any evidence to support her claims; (2) the Sussex County Code addresses the issue of who is responsible for paying the demolition lien amount; (3) Plaintiff has failed to cite to supporting authority or adduce evidence to support her request for an order to reconstruct the home on the property; and (4) the challenge to the required payment of an appellate fee to the Sussex County Board of Appeals fails. Plaintiff moves for summary judgment on the grounds that: (1) she has provided proof that Defendants violated their own policies and procedures in failing to afford her a hearing on the demolition of her property; and (2) she has provided evidence that Defendants intentionally denied her the right to due process and equal protection of Sussex County policies.

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion that a fact cannot be--or, alternatively, is--genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## III. DISCUSSION

The Court liberally construes the Complaint as raising constitutional claims pursuant to 42 U.S.C. § 1983. Section 1983 provides, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United

8

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. The statute does not create substantive rights, but instead provides a remedy for violations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a claim under Section 1983, a plaintiff must allege that a person acting under the color of state law caused a deprivation of a right secured by the Constitution. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

### A. Equal Protection - Peaceful Enjoyment of Property

It appears that Plaintiff's equal protection claim to the peaceful use and enjoyment of her property may be based upon a purported selective enforcement of the Sussex County Code. To prevail on a claim based on an alleged selective enforcement of the law in violation of the equal protection clause, Plaintiff must show: (1) that she was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (internal quotation marks and citation omitted). Persons are "similarly situated" for equal protection purposes when "they are alike in all relevant aspects." *Id.* (internal quotation marks and citation omitted).

There is no evidence of record to support a plausible inference of selective enforcement of the laws, and there is no evidence that Plaintiff was treated differently from similarly situated individuals. Instead, the evidence indicates that Sussex County

9

Code provisions were applied to Plaintiff as written with regard to the demolition of the property and assessment of the demolition fee. *See* Sussex Cty. C. § 71-32.[5] In addition, when Plaintiff sought to appeal, the rules were applied as written. *See* Sussex Cty. C. § 71-31.[6] When Plaintiff questioned the fee required to appeal, she was told

---

[5] **Demolition Orders**.
A.  General. The Code Official may order the owner of premises upon which is located any structure or part thereof which, in the Code Official's judgment, is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, unsanitary or otherwise unfit for human habitation, occupancy or use so that it would be unreasonable to repair the same, to raze and remove such structure or part thereof or, if it can be made safe by repair, to repair and make safe and sanitary or to raze and remove at the owner's option or, where there has been a cessation of normal construction of any structure for a period of more than two years, to raze and remove such structure or part thereof.
B.  Order. The order shall specify a time in which the owner shall comply therewith and specify repairs, if any. It shall be served on the owner of record or an agent where an agent is in charge of the building and upon the holder of any lien in the manner provided for service of a summons by a court of record. If the owner or a holder of a lien of record cannot be found, the order may be served by posting it on the main entrance of the building and by publishing it once each week, for three successive weeks, in a newspaper of general circulation in accordance with the rules of the Superior Court.
C.  Restraining actions. Anyone affected by any such order may, within 30 days after service of such order, apply to a court of record for an order restraining the Code Official from razing and removing such structure or parts thereof. The court shall determine whether the order of the Code Official is reasonable, and, if found unreasonable, the court may issue a restraining order.
D.  Failure to comply. Whenever the owner of a property fails to comply with a demolition order within the time prescribed, the Code Official shall cause the structure or part thereof to be razed and removed, either through an available public agency or by contract or arrangement with private persons, and the cost of such razing and removal shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate as provided in § 71-33 of this Article.
Sussex Cty. C. § 71-32.

[6] **Appeals**.
C.  Board of Appeals; rules and regulations. Each Board of Appeals shall adopt and publish rules and regulations as may be necessary to govern its administrative procedures and proceedings.
D.  Procedure for appeals. Any person aggrieved by an action taken by the Code Official may appeal from such action by filing written notice of appeal with

10

that the requirement was applied to everyone.[7] When Plaintiff did not pay for the costs of demolition, it created a lien on the property and the Sussex County sought to collect the lien in the manner provided by its Code. See Sussex Cty. C. § 71-33[8]. The facts are uncontroverted. There is no evidence to support a claim that Defendants intentionally violated Plaintiff's right to the peaceful enjoyment of her private property without government interference. Therefore, Defendants' motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied as to this

---

the appointed County Board of Appeals or any Community Board of Appeals having jurisdiction within 10 days after the giving or posting of notice of such action. An appeal under this subsection shall stay the effect of the notice of violation or condemnation and shall prevent the Code Official from proceeding with the remedies provided under this chapter pending decision by a Board of Appeals. An appeal to the Superior Court by an aggrieved person from a decision of such Board of Appeals shall be made in the manner provided for appeals from administrative decisions.
Sussex Cty. C. § 71-31.

[7] The Board of Appeals provides that the owner of a structure or their duly authorized agent may appeal from the decision of the Building Official to the Board of Adjustments and Appeals. Rule 14.1 of Rules of Procedure of the Board of Adjustments and Appeals of Sussex County, Delaware; See https://sussexcountyde.gov/board-adjustments-and-appeals (last visited Aug. 5, 2019). The notice of appeal shall be in writing and filed within 90 days after the decision is rendered by the Building Official, and a $600 fee shall accompany the notice of appeal.
Id.

[8] **Creation of Tax Liens**. There is hereby created a tax lien on real property for moneys expended by the County or a community for razing, demolition, removal or repairs of buildings or abatement of other unsafe conditions constituting a threat to the public health and safety where the responsible party refuses or fails to comply with the lawful order of the Code Official after due notice thereof, either actual or constructive. Upon certification of a tax lien to the appropriate County or community official by the Code Official, the amount of such lien shall be recorded and collected in the same manner as other County real estate taxes and paid to the County or community, when collected, by the appropriate County government.
Sussex Cty. C. § 71-33.

11

issue.

B.  **Due Process**

Plaintiff contends that summary judgment is proper on her behalf because Defendants violated their own policies and procedures in failing to afford her a hearing on the demolition of the property. She further contends that, because the Board of Appeals did not render a decision on her appeal, it had no lawful authority to demolish the property. Plaintiff acknowledges that Costello, Adkins, and Passwater were not members of the Board of Appeals, but contends they, nonetheless, acted outside the scope of their official duties in dismissing Plaintiff's appeal and demolishing her property.[9] She further argues that Defendants unlawfully took her property and sold it at a Sheriff's Sale and that Defendants arbitrarily and capriciously applied rules, procedures, and policies, all in violation of her right to due process.[10]

---

[9] Given this admission, summary judgment is appropriate on behalf of these Defendants. Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S.Ct. 2042 (2015).

[10] Plaintiff argues that Defendants committed fraud under 9 Del. C. § 8722(d) when the monitions petition was filed in State Court even though the requirements for a monition petition had not been met, that Defendants violated 25 Del. C. § 2903(b), a statute that provides the time-frame for when a monitions action may be brought, that Defendants disregarded the Superior Court Rules of Civil Procedure, and that the monitions sale should not have taken place. These claims are not raised in Plaintiff's Complaint and are not considered by the Court. *See Amboy Bancorporation v. Bank Advisory Grp., Inc.*, 432 F. App'x 102, 111 (3d Cir. 2011) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Without belaboring the point, Plaintiff sought, and was denied, injunctive relief in this Court and in the Superior Court to stop the monitions sale. Once the sale took place, Plaintiff had the option to set aside the sale by redeeming all taxes, interest, and costs, but she did not. Any claims Plaintiff have regarding the monitions sale are more properly raised in the State Court action.

12

Plaintiff may be raising a substantive due process claim, a procedural due process claim, or both. The Court will address both.

The elements of a substantive due process claim are (1) the deprivation of a fundamental property interest, *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir.2000); and (2) governmental deprivation of that property interest in a manner that is arbitrary or shocks the conscience. *See United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003) ("'[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)) (internal quotations omitted)). The use and enjoyment of real property qualifies for protection under substantive due process. *See DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600-01 (3d Cir. 1995), *overruled on other grounds by United Artists Theatre Circuit*, 316 F.3d at 399-402; *but see Greenbriar Village, L.L.C. v. Mountain Brook City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)) (holding that property interests like those a home owner enjoys in his residence are created and defined by state law rather than the Constitution); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution . . . substantive due process rights are created only by the Constitution.").

It is well established that the state has the right to regulate the use and conditions of property to ensure the public safety and health, and that the public interest

demands that dangerous conditions be prevented or abated. *See Keystone Bituminous Coal Ass'n. v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) (holding that abating a public nuisance is not a taking under the Fifth Amendment because "[l]ong ago it was recognized that 'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' . . . and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.") (internal citation omitted); *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 537 (1967) (holding that code inspections aimed at securing city-wide compliance with minimum physical standards for private property, but conducted without a warrant procedure, were reasonable even though they lacked the traditional safeguards that the Fourth Amendment guaranteed, because "the public interest demands that all dangerous conditions be prevented or abated.").

Here, the record reflects that the property was in a dangerous condition (D.I.60-1 at 2-7 ("Field Inspection Report" dated April 7, 2017, and accompanying photographs)) and Plaintiff has provided no evidence otherwise. In addition, the record reflects that the property was demolished in accordance with the procedures of the Sussex County Code. There is no evidence to the contrary. Given the unsafe structure and that the property was unfit for human occupancy, no reasonable jury could find that the demolition in accordance with Sussex County Code rules and procedures shocks the conscience. *See Davet v. City Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006) (affirming district court's holding that plaintiff's substantive due process claim failed because he could not establish that municipal actions taken pursuant to a valid condemnation order

14

and in accordance with the procedures mandated by city and state law shocked the conscience or were arbitrary and capricious).

Procedural due process normally requires that a governmental deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). "The Due Process Clause permits persons whose interests may be adversely affected by government decisions to participate in those decisions." *Matthias v. Bingley*, 906 F.2d 1047, 1051 (5th Cir. 1990).

The record reflects that Plaintiff received notice that the property was unsafe and unfit for human occupancy, a demolition order issued, and it provided a deadline to raze the structure. Plaintiff was advised that the Sussex County Code Office would have the structure razed and removed if the deadline was not met, and that the costs would be charged against the real estate. When Plaintiff became aware of the demolition order, she sought an emergency injunction in the Sussex County Superior Court as allowed under the Sussex County Code. The parties then entered into an agreement that there would be no action to demolish the property until the matter was heard by the Sussex County Board of Appeals.

The Board of Appeals requires an appeal to be in writing and that a $600 fee accompany the notice of appeal. The Board of Appeals adopts its own rules and regulations to govern its administrative proceedings and has no provision for waiver of the fee. *See* Sussex Cty. C. § 71-31C. Plaintiff was notified of the fee requirement, requested a waiver, advised that the Board of Appeals had no provision for a fee waiver, that the Board of Appeals must receive the fee by September 13, 2017, or the

15

September 20, 2017 hearing would be canceled. When Plaintiff did not pay the fee, the hearing was canceled, the Board of Appeals considered the appeal closed, and the demolition proceeded.

Plaintiff asserts that her rights were violated because the Board of Appeals did not waive the required $600 fee and then it dismissed her appeal when she did not pay the fee. She relies upon § 52-32.A of the Sussex County Code to support her position that the Board of Appeals may vary the application of any provision of its Code. Title 52, however, is inapplicable to the instant case. Its provisions refer to the Building Code, not the Sussex County Housing Code found at Title 71.

As discussed, the Board of Appeals requires a $600 fee to file an appeal. Fixed fees, such as the $600 fee, serve to deter the filing of frivolous appeals. *See In re Anderson*, 511 U.S. 364, 365-66 (1994). And, in general, the payment of filing fees is a precondition to docketing or opening a case. *See Porter v. Department of Treasury*, 564 F.3d 176, 179 (3d Cir. 2009). When a litigant fails to pay the fees, the appellate review may be dismissed. *See, e.g., Barner v. Williamson*, 461 F. App'x 92, 95 (3d Cir. 2012) (court of appeals acted within its power and authority in dismissing notice of appeal for failure to pay filing fee). In addition, an appellant's failure to take any step other than the timely filing of a notice of appeal is grounds for the Board of Appeals to take action it considers appropriate, including dismissal of the appeal or canceling the appeal hearing. *See, e.g., Barner, supra*. As discussed, once the hearing was canceled, Sussex County notified Plaintiff that it was resuming its efforts to bring the property into compliance with the Sussex County Code.

Of note is that there is no evidence of record that Plaintiff appealed the fee issue to the Superior Court following the closure of the appeal as provided in the Sussex County Code. *See* Sussex Cty. C. § 71-31.D (an appeal to the Superior Court by an aggrieved person from a decision of such Board of Appeals shall be made in the manner provided for appeals from administrative decisions). Instead, she sought other avenues to obtain the relief she sought. Thus, the evidence of record does not support a finding that Defendants violated Plaintiff's right to procedural due process.

The record fails to establish that Defendants violated Plaintiff's right to due process. Therefore, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary on this issue.

### C. Depriving African Americans of Beach Property

Plaintiff argues that there is a conspiracy afoot to deprive African Americans of their beach property. She alleges, without evidentiary support, that Defendants doused the property with gasoline and set it on fire for the purpose of obtaining it for financial benefit and for the benefit of wealthy developers. She contends that once she rejected the offer to purchase the property she was immediately served with the notice of the Sheriff's Sale, and the property was sold.

The purchase offer was made by Partnerships for Development, Inc., which did not purchase the property at the Sheriff's Sale. Instead, the property was purchased by Wayne D. Hudson, Robert J. Downes, and David R. Downes. Plaintiff claims that West Rehoboth Community Land Trust and its registered agent disguised themselves as Partnerships for Development, Inc., a non-existing Delaware Corporation. The Court takes judicial notice that the official website for the State of Delaware indicates that

17

Partnerships for Development, Inc. does exist and that it was incorporated in the State of Delaware on July 11, 2014. *See* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited Sept. 12, 2019). Plaintiff provides no evidence to support her claim that entities or individuals disguised themselves to purchase the property in a surreptitious manner.

There is no evidence of record to support Plaintiff's allegations. Therefore, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment on this issue.

### D. Interference in Use of Property

The Complaint alleges that Defendants: (1) intentionally cut off the water supply to the property and made it impossible for Plaintiff to stay in a shed on the property when she came for short vacations; and (2) Defendants sought to remove a shed on the property that had been in the same location for over ten years in an attempt to prevent Plaintiff from using the property.

Plaintiff's claims are unsupported by anything in the record. There is no evidence that Defendants intentionally cut off the water supply. With regard to the shed, Plaintiff and the other property owners received a violation notice because a recent site inspection had verified that a shed on the property was being used and occupied in violation of the Sussex County Code. The property owners were directed to cease the activity and to conform to the Sussex County Code. The violation notice does not, however, state the shed would be removed from the property.

Plaintiff's unsupported assertions do not suffice to defeat Defendants' motion for summary judgment. Nor do they suffice for her to prevail on these claims. Therefore,

the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment on these issues.

## IV. CONCLUSION

Based upon the above discussion, the Court will: (1) grant Defendants' motion to for summary judgment (D.I. 59); (2) deny Plaintiff's motion for summary judgment (D.I. 61); and (3) deny Plaintiff's motion to strike (D.I. 73).

An appropriate order will be entered.